Filed 12/19/25  In re S.N.-F. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| In re S.N.-F., a Person Coming Under the Juvenile Court Law. | B345667 (Los Angeles County Super. Ct. No. 24CCJP04053) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> M.N., <br><br> Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Sumako McCallum, Judge Pro Tempore.  Affirmed.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel and Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

————————————

## MEMORANDUM OPINION[1]

At a combined jurisdiction and disposition hearing held on February 19, 2025, the juvenile court asserted dependency jurisdiction over S.N.-F. (born in 2014) based on: (1) a substantial risk that S.N.-F. would be sexually abused by his father, Jose N. (father), and (2) defendant and appellant M.N.'s (mother's) failure to protect S.N.-F. from that substantial risk of sexual abuse.[2] The court declared S.N.-F. a dependent of the court, removed him from father's custody, authorized S.N.-F. to remain in mother's custody, and ordered family maintenance services for mother. On appeal, mother challenges the jurisdictional findings against her, but not the court's finding there was a substantial risk that father would sexually abuse S.N.-F.

We exercise our discretion to entertain mother's appeal, even though (1) the uncontested findings against father alone are

————————————

[1] We resolve this case by memorandum opinion because it "raise[s] no substantial issues of law or fact . . . ." (Cal. Stds. Jud. Admin., § 8.1.) We summarize only those facts relevant to our disposition of this appeal. We derive our factual summary in part from the parties' admissions in their appellate briefing. (See *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 772, fn. 2 [employing this approach].)

[2] Father is not a party to this appeal.

sufficient to support dependency jurisdiction over S.N.-F., and (2) the orders from a subsequent review hearing terminating jurisdiction and awarding mother sole physical custody arguably moot this appeal.  As for the merits, we conclude the juvenile court did not err in finding mother failed to protect S.N.-F. from a substantial risk that father would sexually abuse him.  Mother fails to show no reasonable trier of fact could find:  (1) mother minimized allegations father had (a) sexually abused two relatives, to wit, father's granddaughter and niece and (b) repeatedly touched S.N.-F.'s penis while play fighting with him, and (2) mother did not take adequate measures to protect S.N.-F. from father.  Accordingly, we affirm the orders issued at the combined jurisdiction and disposition hearing.

A.    **Assuming Arguendo This Appeal Is Moot, We Nonetheless Exercise Our Discretion To Reach the Merits**

"As a general rule, a single [uncontested] jurisdictional finding . . . is sufficient to support jurisdiction and render moot a challenge to the other [jurisdictional] findings."  (See *In re M.W.* (2015) 238 Cal.App.4th 1444, 1452 (*M.W.*).)  Furthermore, an order terminating dependency jurisdiction can moot an appellate challenge to a prior jurisdictional finding if the subsequent order terminating jurisdiction prevents the reviewing court from providing effective relief to the appellant.  (See *In re D.P.* (2023) 14 Cal.5th 266, 272–273, 276–277.)  "Even when a case is moot, courts may exercise their 'inherent discretion' to reach the merits of the dispute."  (*Id.* at p. 282.)

Here, although mother "challenges all of the [jurisdictional] counts that were sustained against her," she does not contest the juvenile court's jurisdictional findings against father.

Additionally, approximately six months after the juvenile court asserted dependency jurisdiction over S.N.-F., the court terminated jurisdiction with a juvenile custody order granting mother sole physical custody of the child, awarding the parents joint legal custody, and authorizing father to have supervised visitation.[3]  In support of her request that we nonetheless reach the merits of her appeal, mother argues, among other things, "A finding that a parent knowingly or negligently exposed his or her children to a substantial risk of physical and sexual abuse is pernicious."  (Citing *M.W.*, *supra*, 238 Cal.App.4th at p. 1452.)

Assuming arguendo mother's appeal is moot, we exercise our inherent discretion to reach the merits in "an abundance of caution . . . ."  (See *In re C.C.* (2009) 172 Cal.App.4th 1481, 1488–1489; see also *id.* at p. 1483 [indicating a reviewing court may exercise its discretion to review a moot dependency appeal in order "to avoid any possible collateral prejudice" to the appealing parent].)

## B.     Substantial Evidence Supports the Juvenile Court's Jurisdictional Findings Against Mother

At the combined jurisdiction and disposition hearing held on February 19, 2025, the juvenile court sustained four jurisdictional counts concerning S.N.-F., a 10-year-old boy, to wit, two counts under Welfare and Institutions Code[4] section 300, subdivision (b)(1) (counts b-1 and b-2) and two counts under subdivision (d) (counts d-1 and d-2).

---

[3]  This court granted mother's request for judicial notice of these subsequent juvenile court orders.

[4]  Undesignated statutory citations are to the Welfare and Institutions Code.

Counts b-1 and d-1 alleged: "The child, S[.N.-F.'s] father . . . sexually abused the father's five-year old granddaughter, A[.N.] . . . , who was a member of the child's household. On 12/08/24, the father pulled the down [*sic*] the child's underwear and fondled the granddaughter's vagina. On prior occasions, the father fondled the granddaughter's vagina, exposed the father's genitals to the granddaughter, and masturbated in close proximity to the granddaughter, ejaculating on the granddaughter's face, mouth area, and vaginal area. On 12/14/24, the father was arrested for Lewd or Lascivious Acts with a Child Under 14 Years. The child's mother . . . failed to take action to protect the child when she knew, or reasonably should have known, of the father's sexual abuse of the granddaughter in the child's home. Such sexual abuse of the granddaughter by the father, and the mother's failure to protect the child, endangers the child's physical health and safety, creates a detrimental home environment, and places the child at risk of physical harm, damage, danger, sexual abuse and failure to protect."

Counts b-2 and d-2 averred in relevant part: "The child, S[.N.-F.'s] father . . . sexually abused the father's minor niece, L[.H.] . . . , who was a member of the child's household, when the niece was between the ages of seven and ten-years old. On a prior occasion, the father sat the niece of the father's lap [*sic*], pulled the father and niece's pants and underwear down, and raped the niece by placing the father's penis in the niece's vagina, causing the niece pain, while in the presence of [S.N.-F.] . . . and the father's minor niece, A[.H.] . . . On a prior occasion, the father pulled the down [*sic*] the niece's pants and underwear, and raped the niece in the father's truck, while child [S.N.-F.] and the

5

father's minor niece, A[.H.], were also in the truck. . . . On 12/14/24, the father was arrested for Continuous Sexual Abuse of a Child and Sodomy Victim Under 10 Years. The child's mother . . . failed to take action to protect the child when she knew, or reasonably should have known, of the father's sexual abuse of the niece in the child's home. Such sexual abuse of the niece by the father, and the mother's failure to protect the child, endangers the child's physical health and safety and places the child at risk of physical harm, damage, danger, sexual abuse and failure to protect."

For the reasons set forth below, we conclude the juvenile court did not err in finding jurisdiction under section 300, subdivision (d) because there is substantial evidence mother failed to protect S.N.-F. from father. Accordingly, we decline to address whether the evidence supporting jurisdiction under subdivision (d) also gave rise to jurisdiction under subdivision (b)(1). (See *In re Briana V.* (2015) 236 Cal.App.4th 297, 308 [" '[T]he minor is a dependent if the actions of either parent bring [the minor] within *one* of the statutory definitions of a dependent. [Citations.]' [Citation.] 'For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings[,]' " italics added].)

### 1.    *Applicable law and standard of review*

Section 300 identifies the circumstances under which "[a] child . . . is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court . . . ." (See § 300.) For instance, a child is subject to the court's dependency jurisdiction if "[t]he child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by the

6

child's parent or guardian or a member of the child's household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse." (See *id.*, subd. (d).)

" 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings [of the juvenile court,] . . . we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the [juvenile] court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the [juvenile] court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the [juvenile] court. [Citations.] . . . [Citation.]" . . .' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*).)

"The juvenile court's orders are 'presumed to be correct, and it is appellant's burden to affirmatively show error' " with " ' "reasoned argument and citations to authority . . . ." ' [Citation.]" (See *In re J.F.* (2019) 39 Cal.App.5th 70, 79.) Accordingly, " '[t]he appellant has the burden to demonstrate there is no evidence of a sufficiently substantial nature to support the [juvenile court's jurisdictional] findings . . . .' [Citation.]" (See *In re Lana S.* (2012) 207 Cal.App.4th 94, 103.)

### 2. *Mother does not show the juvenile court erred in finding she failed to protect S.N.-F. from a substantial risk of sexual abuse*

Mother contests the juvenile court's assumption of jurisdiction over S.N.-F. Before addressing her jurisdictional challenges, we reiterate that mother does not contest the court's finding there was a substantial risk that father would sexually abuse S.N.-F. This appeal thus turns on whether mother has shown no rational trier of fact could find she failed to protect S.N.-F. from the substantial risk of harm presented by father.

As a preliminary matter, mother asserts that by sustaining counts d-1 and d-2, "[t]he [juvenile] court found true that [mother] failed to protect A.N. and L.[H]., members of the household, from [father's] sexual abuse." She also cites a page from the reporter's transcript from the combined jurisdiction and disposition hearing for the following proposition: "In making findings that [mother] failed to protect A.N. and L.H., the court stated that [mother] had minimized what happened to them." Although mother acknowledges she "had difficulty believing the allegations," mother insists she did not fail to protect A.N. and L.H. because "[she] is not the parent or legal guardian of either [A.N. or L.H.,]" and "the record does not indicate that prior to [A.N.'s and L.H.'s] disclosures [of father's sexual abuse] in December 2024, . . . [mother] had reason to believe that [father] was sexually abusing [mother's] niece and granddaughter."

Mother misconstrues the juvenile court's findings. By sustaining counts d-1 and d-2, the court found mother failed to protect S.N.-F. (identified in each jurisdictional count as "the child") from father "when she knew, or reasonably should have known, of the father's sexual abuse of *the [granddaughter and*

8

*the] niece* in the child's home." (Italics added.) Indeed, the reporter's transcript excerpt cited by mother shows the court faulted her for "seem[ing] to continue to discount and minimize what happened" to her granddaughter and her niece, and for failing to "ma[ke] a specific plan to protect" S.N.-F. Thus, the court did not find that mother failed to protect A.N. and L.H. from father, but instead that she failed to protect S.N.-F. upon being apprised of the allegations that father sexually abused relatives in the same household.

Next, mother suggests she did take adequate steps to protect S.N.-F. from father. Citing a page from the detention report filed by the Los Angeles County Department of Children and Family Services (DCFS or the agency), mother asserts "she did not immediately have a plan as to how to protect S.N.[-F.]" a mere "[t]wo days after [she] learn[ed] of the allegations." In an apparent effort to demonstrate she later formulated a plan to protect S.N.-F., mother claims an excerpt from the agency's jurisdiction and disposition report shows that "at the time of the jurisdiction hearing[, she] had moved to a new residence with S.N.[-F.] and [his adult sibling,] U.N." Although the page from the jurisdiction and disposition report mother cites does show she informed the agency that she, S.N.-F., and S.N.-F.'s adult sibling had moved to a new home on January 19, 2025, the excerpt does not indicate mother had moved to the new residence to safeguard S.N.-F. from father. That mother had developed a plan to protect S.N.-F. was thus not the only reasonable inference that could have been drawn from mother's decision to move.

Further, mother points out that during a January 21, 2025 interview, she informed the agency she had " 'told . . . father[ ] that he couldn't enter the home[ and mother's] priority is

9

S[.N.-F].' " Yet, mother notes that at the initial hearing held on January 15, 2025, the juvenile court "detained S.N.[-F.] from [father] and released him to [mother,]" "ordered [father] not to be in the family home[,] and ordered that [DCFS] may make unannounced visits to the home to ensure he [was] not present." Thus, mother seems to have been simply conveying to father her intention to adhere to the court's orders. In light of mother's statements during the January 21, 2025 interview that she did not believe the allegations of sexual abuse or " 'think [S.N.-F. was] at risk of sexual abuse by his father[,]' " a reasonable trier of fact could have found a substantial risk that mother would allow father to have unfettered access to S.N.-F. if juvenile court supervision were withdrawn.[5]

Mother also suggests the substantial risk that father would sexually abuse S.N.-F. had abated by the time of the combined jurisdiction and disposition hearing because "S.N.[-F.] did not see [father] in person after the allegations of sexual abuse were made," and father "remained incarcerated at the time of the jurisdiction hearing." Although the agency's jurisdiction and disposition report shows a deputy district attorney informed the agency on January 30, 2025 that father was being held in custody without bond on multiple counts of lewd act on a child, counsel also stated that father's criminal case was only " 'at the preliminary hearing setting stage . . . .' " If father had already

_____

[5] Because a rational factfinder could have arrived at that conclusion, we reject mother's argument she had eliminated the substantial risk of harm to S.N.-F. prior to the combined jurisdiction and disposition hearing by "promptly enroll[ing] in treatment services, [being] forthcoming with her therapist as to the allegations, [and] . . . learning about sexual abuse."

10

been convicted of sexual offenses and sentenced to a lengthy prison term, then his incarceration could potentially have mitigated or eliminated the substantial risk of harm to S.N.-F. Because that was not the case, the juvenile court did not err in asserting dependency jurisdiction over the child.

Lastly, although mother admits S.N.-F. told the agency "about his father hitting his penis when they were horseplaying," she argues S.N.-F.'s statements to DCFS regarding this behavior "were inconsistent," and that mother "may have thought [at the outset of the case that father's] horseplay with S.N.[-F.] was normal behavior . . . ." According to the detention report, S.N.-F. indicated during a December 11, 2024 interview that "when he play fights with his father, his father touches him on his private areas" "with his . . . fists," and that "this happens . . . . 'a lot.' " Yet, the jurisdiction and disposition report shows that when DCFS interviewed S.N.-F. on January 21, 2025, he "denied his dad touched his genitals when they pretended to play boxing," and that S.N.-F. said father merely " 'pretend[ed] he was going to hit [S.N.-F.] there (penis) but he (dad) never did.' "

Because the detention report indicates father admitted to the agency on December 16, 2024 that he spoke to S.N.-F. concerning his claim that father hit S.N.-F.'s genitals "during horseplay," the juvenile court could have reasonably inferred father prompted S.N.-F. to retract his initial allegation that father touched his genitals multiple times. (See *I.J.*, *supra*, 56 Cal.4th at p. 773 [holding that under the substantial evidence standard of review, " ' "issues of fact and credibility are the province of the [juvenile] court" ' "].) The detention report further indicates mother expressed no concern when the agency informed her of S.N.-F.'s allegations that "father punches him on his

11

genitals" "when they horseplay . . . ."  Based on this evidence, the court reasonably could have found that mother was not sufficiently protective of her son.

For the foregoing reasons, we conclude mother failed to demonstrate that the juvenile court's jurisdictional findings against her are not supported by substantial evidence.

## DISPOSITION

We affirm the orders issued by the juvenile court at the combined jurisdiction and disposition hearing held on February 19, 2025.

<u>NOT TO BE PUBLISHED.</u>

BENDIX, Acting P. J.

We concur:

WEINGART, J.

M. KIM, J.

12